**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**at Greenbelt**

| | |
|---|---|
| IN RE: | |
| **ZACHAIR, LTD.,** | **Case No. 20-10691-LSS** |
| **Debtor.** | **(Chapter 11)** |
| **LAWRENCE A. KATZ, Plan Administrator,** | |
| **Plaintiff** | |
| **v.** | **Adversary Proceeding 23-00014** |
| **NABIL J. ASTERBADI, *et al.*,** | |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
**AS TO MAUREEN ASTERBADI ON COUNT II**

Defendant Maureen Asterbadi ("**Mrs. Asterbadi**"), through her undersigned counsel,

submits this *Memorandum of Law in Support of Motion for Summary Judgment as to Maureen*

*Asterbadi on Count II*.

## I.    INTRODUCTORY STATEMENT

Mrs. Asterbadi, although named as a director of Zachair, Ltd. ("**Zachair**")[1] from the time

of its incorporation in 1994, never had any role in the decision-making or day-to-day affairs of the

---

[1]   Zachair Ltd. in its pre-bankruptcy non-debtor-in-possession state is referred to herein as
"**Zachair,**" and Zachair Ltd. in its post-Petition debtor-in-possession state is referred to as
"**Zachair DIP**".

business.[2] The Complaint against Mrs. Asterbadi is patently unjust and is the quintessential example of adding "insult to injury." It is unjust because Plaintiff is intentionally pursuing her, despite knowing her virtual lack of involvement with Zachair (and her complete lack of involvement with Zachair DIP). Plaintiff is aware that Dr. Asterbadi has no resources to pay any judgment obtained against him (a fact apparently well-known by the professionals even during the chapter 11). So, the Plaintiff has set his sights on Mrs. Asterbadi and what little (in the overall context of her life) she has been able to secure for her retirement.

The insult to injury arises from Zachair DIP's trainwreck chapter 11, which Mrs. Asterbadi had nothing to do with. It appears that Zachair DIP became eligible for Subchapter V shortly after the Petition Date, and had it pursued that path, substantial professional fees would have been avoided and the proceedings streamlined to some meaningful extent. Regardless of whether it was Subchapter V eligible, a massive $3 million (plus) price tag for all of the professionals in a case where the undisputed secured and unsecured debts hover around $6 million is patently excessive. And, while the undersigned argue that the evidence shows the Property was worth more (at all times) than the debts in the case, even the artificially depressed price of $7.5 million paid by NVR in late 2022 (under what appear to be suspect premises), could have paid creditors largely in full.

Yet, after a year, unsecured creditors have received nothing, and Plaintiff has spent hundreds of thousands of dollars chasing Mrs. Asterbadi, after her portion of the Property's equity

---

[2] Mrs. Asterbadi reserves all rights, including but not limited to the right to file additional dispositive motions as to any claims made against her in the Complaint, and to raise and make any arguments at a trial on any issues affecting her rights and interests. Mrs. Asterbadi reserves all rights, claims and positions set forth in her Amended Answer. Mrs. Asterbadi advises the Court that due to her lack of involvement with Zachair and Zachair DIP, undersigned counsel has issued various discovery requests, but as of this filing, no party has completely fulfilled all of its legal obligations under the applicable discovery laws and rules. Mrs. Asterbadi reserves all rights with respect to all pending and future discovery matters and disputes.

was wiped out by the process. Making matters worse, Plaintiff and others (including Whiteford Taylor and NVR), knowing full well that Mrs. Asterbadi was not involved with Zachair and Zachair DIP and therefore must rely upon legal counsel to put the pieces of the puzzle together, fail and refuse to timely (and otherwise) comply with properly-issues discovery and document subpoenas. This all adds up to an expensive insult, in the extreme, to the already horrific injury caused to Mrs. Asterbadi, and the Court should take and consider all steps to bring it to an end (as to her).  The Court should grant summary judgment in favor of Mrs. Asterbadi on Court II of the Complaint for at least four reasons:

*First*, Mrs. Asterbadi had nothing to do with the Abandonment Motion. She did not sign, file, or authorize the filing of the Abandonment Notice. She was not consulted by anyone regarding the Abandonment Notice and first became aware of it in the context of this adversary proceeding. She does not understand it and literally had nothing to do with it. As such, she cannot be held liable for the affirmative tort of filing the Abandonment Notice, assuming for the sake of argument that a debtor properly availing itself of the Bankruptcy Code's abandonment provisions could even constitute a tort. *See* Part IV.B.1. below.

*Second*, the Bankruptcy Resolution granted Mrs. Asterbadi no rights to undertake any actions in the chapter 11 (or otherwise), including filing the Abandonment Notice, for Zachair DIP, the newly-created entity as of the Petition Date. She cannot be held liable, in the context of this case, for actions she had no authority to undertake (which were in fact undertaken by Whiteford Taylor, presumably with the approval of Dr. Asterbadi). *See* Part IV.B.2. below.

*Third*, as matter of law, a pre bankruptcy director (a) who is not designated by a bankruptcy resolution to act for or on behalf of the debtor in possession, (b) who is not designated by the bankruptcy court under Bankruptcy Rule 9001, and (c) who post-petition never acted for or on behalf of the debtor in possession, cannot, nevertheless be held liable for

breach of fiduciary duty based on affirmative acts taken by a separate director (i.e., the one authorized by the bankruptcy resolution to act for the debtor in possession), based upon the paid-for analysis and advice of chapter 11 counsel. *See* Part IV.B. below.

*Fourth*, Zachair DIP's intent to waive and abandon the Avoidance Actions (and its action plan for doing so) was one of the most widely published events, and was included in every version of the disclosure statement and plan filed in the chapter 11 case, including those approved by the Court. More than 90% of the total debt in the case was concentrated in the hands of the Big Five creditors, two of which were law firms, and all of which were represented by sophisticated bankruptcy counsel. The deadlines for objecting to the disclosure statement, plan and Abandonment Notice, each of which waived or abandoned the Avoidance Actions, without any objections by any creditors to such waiver and abandonment. The bankruptcy estate and creditor body waived their rights, if any, to recover from the Avoidance Actions, and the Plaintiff should not be permitted to backdoor the process in order to try to get a second bite at them. *See* Part IV. B. below.

## II.    BACKGROUND[3]

### A.    Zachair DIP's Bankruptcy Filing and Bankruptcy Resolution

On January 17, 2020 (the "**Petition Date**"), Zachair, Ltd. filed a voluntary Chapter 11 bankruptcy petition (the "**Petition**") with the Court.[4] *See Main Case Docket Entry* ("**MCDE**") 1. The Petition was signed by Dr. Nabil Asterbadi as President and Bradford Englander (an attorney with Whiteford, Taylor & Preston, L.L.P. ("**Whiteford Taylor**")) as bankruptcy counsel.[5] *Id.* Upon filing the Petition, Zachair, Ltd. became a new entity called a debtor-in-possession. *See, e.g.,*

---

[3] While these background facts are believed to be undisputed, they are included for context, and are not essential for the resolution of the legal question presented in Mrs. Asterbadi's Summary Judgment Motion. Mrs. Asterbadi was (prior to commencement of this litigation), and remains, unaware of the vast majority of the facts set forth in the background section, and has relied upon undersigned counsel to cull the record in order to provide the Court with the context within which Plaintiff commenced this adversary proceeding.

[4] The Petition checked "none of the above" to describe Zachair DIP's business and filled in the NAICS query with "4812" which is for debtors engaged in the business of "non scheduled air transportation." *See* https://www.naics.com/six-digit-naics/?v=2022&code=48-49

Notably in light of the disputed debts in the case, it appears that Zachair DIP became eligible for Subchapter V relief on March 27, 2020, when the debt limit for streamlined Subchapter V relief was increased to $7.5 million in undisputed, non-contingent, liquidated debts under the Coronavirus Aid, Relief, and Economic Security (CARES) Act. *See* MCDE 88-2 (Claim Summary for Zachair DOP) (after excluding the $5,617,818 disputed claim of PD Hyde, Zachair DIP had total undisputed debts of $3,074,219.75, well below the $7.5 million Subchapter V limit). Proceeding under Subchapter V would, for example, have eliminated the costly disclosure statement requirement, and the absolute priority rule. Whiteford Taylor's fees for the half-dozen or more versions of the disclosure statement and plan exceeded $375,000. *See* MCDE 268 at 13, MCDE 425 at 16. Proceeding under Subchapter V would have substantially reduced the overall $3 million in professional fees incurred in the case, thereby freeing up funds to pay at least something to the approximately $3.5 million in allowed unsecured claims. Whiteford Taylor's First Fee Application reveals that they considered conversion to Subchapter V, though their time entries do not indicate why or even whether they made a recommendation (one way or the other) to Zachair DIP and Dr. Asterbadi (who has no recollection of any correspondence or conversations with Whiteford Taylor on the matter).

[5] Nabil Asterbadi is a retired medical doctor. His primary practice was as an OB/GYN, and he spent virtually his entire medical career caring for mothers and delivering babies at Columbia Hospital for Women in Washington, D.C. Dr. Asterbadi is not a lawyer and has no legal training, nor does he have any formal training other than in medicine.

*Operating Guidelines and Reporting Requirements of the United States Trustee for Chapter 11 Debtors-In-Possession and Chapter 11 Trustees, District of Maryland*, at 1.

On January 13, 2020, prior to the Petition Date, Dr. Asterbadi and Mrs. Asterbadi adopted and signed the Certificate of Corporate Resolution (prepared by Whiteford Taylor), that is attached to the Petition (the "**Bankruptcy Resolution**"). *See* MCDE 1, PDF pages 23-24. The Bankruptcy Resolution, in relevant part, resolved as follows:

> RESOLVED, Nabil Asterbadi (the "Designated Representative") be, and hereby is, authorized and empowered, in the name of the Company, to execute and verify a petition for relief under chapter 11 of the Bankruptcy Code and to cause the same to be filed with the Bankruptcy Court at such time as the Designated Representative shall determine; [and]
>
> RESOLVED, that the Designated Representative, and such other agent(s) as the Designated Representative and/or Board of Directors of the Company shall from time to time designate (each a "Representative"), be, and each of them hereby is, authorized to execute and file on behalf of the Company all petitions, schedules, lists, documents, pleadings, and other papers and to take any and all action that they may deem necessary or proper in connection with the bankruptcy case and the Company[.]

At no time was Mrs. Asterbadi appointed as either a Designated Representative or a Representative of Zachair DIP.

### B.    Claims and Creditors of Zachair DIP

In 2020, Zachair DIP had a sum total of five (5) creditors (the "**Big Five**") asserting claims of $100,000 or more.

| Creditor | Amount | Status |
|---|---|---|
| PD Hyde Field, LLC | $5,617,818[6] | unsecured – contingent, unliquidated disputed |
| Sandy Spring Bank | $2,392,410.30 | over secured |

---

[6] The PD Hyde claim was eventually allowed at $3.2 million. *See e.g.* **[Sept 22 DS]**

| | | |
|---|---|---|
| Womble Bond Dickerson ("Womble") (law firm) | $172,414.47 | unsecured |
| Meyers, Rodbell & Rosenbaum, P.A. ("Meyers") (law firm) | $110,736.66 | unsecured |
| TD Auto Finance | $103,108.77 | over secured |
| **Total (Big Five)** | **$8,396,488.20**[7] | |

Each of the Big Five creditors (two of which are law firms) was represented during the entire case by competent and sophisticated bankruptcy counsel. *See* MCDE 7 (Shulman Rodgers for PD Hyde), 10 (Meyers for itself), 14 (Womble for itself), 19 (Henry & O'Donnell, P.C., for Sandy Spring Bank), 40 (Evans for TD Auto). The balance of the claims in the case (some of which were over secured), with fewer than a dozen holders, totaled less than $250,000.

### C.    Abandonment of the Avoidance Actions

On December 22, 2021, shortly before the two-year anniversary of the Petition Date, Zachair DIP, through and on the advice of Whiteford Taylor,[8] filed the Notice of Abandonment of Avoidance Actions (the "**Abandonment Notice**"). *See* MCDE 301. Without citing or specifying

---

[7]  The Big Five total reduces to approximately $6 million (still well below the Subchapter V threshold) when PD Hyde's claim is set at $3.2 million. But for $3 million in professional fees, all claims int the case would have been paid in full (or nearly so) even at the artificially depressed price of $7.5 million ultimately paid by NVR.

[8]  Whiteford Taylor billed fees of at least $37,878.50 under Matter Code 106: "**Investigations, Avoidance Actions, and Affirmative Claims**." *See* MCDE 425 at 16. Whiteford's complete narrative reads "**Description:** This matter category includes time spent by WTP attorneys providing services relating to investigating potential avoidance actions of the Debtor; advising the Debtor regarding potential avoidance actions; and preparing and filing a notice of abandonment of avoidance actions." *Id*. at 18. Time slips for counsel's services are located at MCDE 425-1 pages 61-65. The record is clear that upon advice of Whiteford Taylor, Zachair DIP's decision to waive the Avoidance Actions occurred prior to the first version of the Disclosure Statement being filed on June 28, 2021. *See* MCDE 224 at 21; MCDE 225 at 28. We note that Whiteford was analyzing the Avoidance Actions at the same time. *See, e.g.,* First Whiteford Taylor Fee Application, June 27, 2021. MCDE 268-1, page 189 ("PREPARE ANALYSIS OF POTENTIAL AVOIDANCE ACTIONS").

any facts to support her involvement with the matter, Plaintiff sues Mrs. Asterbadi in Count II for filing the Abandonment Notice. Plaintiff contends that because Mrs. Asterbadi knew or should have known, as of December 22, 2021, that the Property would not sell for a price sufficient to pay creditors in full, she violated her fiduciary duty by filing the Abandonment Notice.

To understand how distorted and out of context Plaintiff's Count II really is, and regardless of Mrs. Asterbadi's having nothing to do with the preparation and filing of the Abandonment Notice, one need only read the text of the notice itself. *First*, Paragraph 2 states that the Court-approved Disclosure Statement (cited as Docket No. 246) and proposed Plan (cited as Docket No. 245) expressly provide for a full waiver of all Avoidance Actions,[9] and Paragraphs 3 and 4 *quote* the Avoidance Action claim waiver language from the approved Disclosure Statement and proposed Plan.  Then, Paragraph 5 states that "The deadline to object to confirmation of the Plan was November 16, 2021. See Docket No. 236.  No objections were filed." Neither the Big Five creditors (all represented by sophisticated bankruptcy counsel), the United States Trustee, nor anyone else ever objected to such waivers as being made in bad faith, contrary to law, or constituting a breach of fiduciary duty (which would presumably constitute bad faith and a violation of law). Plainly, all potential objections to Zachair DIP's proposed abandonment of the Avoidance Actions were waived as a matter of law by all creditors and parties in interest.

*Second*, Paragraph 2 states that the Plan is premised upon a sale of the Property pursuant to a "Sales Contract" with JP Land Holdings, LLC ("**JP Land**") that had been approved by order

---

[9]  At least five (5) versions of the Disclosure Statement and at least five (5) versions of the Plan are on the Main Case Docket. Every one of them (including the final versions) provided for a full waiver of all Avoidance Actions. Even the secured creditor's proposed plan provided for a waiver of the Avoidance Actions. *See e.g.*, June 28, 2021 Disclosure Statement, MCDE 225 at 28, and June 28, 2021 Plan, MCDE 224 at 21.

of the Court entered on July 27, 2021 (citing Docket No. 235) (the "**First Sale Order**"). The purchase price under the Sales Contract actually approved by the Court was $16 million. *See* MCDE 235 (page 25 of 74) ("The total Purchase Price for the Property shall be SIXTEEN MILLION DOLLARS ($16,000,000), plus the Transfer Tax Savings (as defined below) (the "**Purchase Price**")"). While paragraph 6 of the Abandonment Notice indicates the purchaser sought and obtained additional time for due diligence, the Notice was silent about the Property being worth anything less than the $16 million approved by the Court. At that purchase price and as of the date of the filing of the Abandonment Notice, all creditors ($6.25 million – see above) and professionals (owed substantially less in December 2021 than the final $3 million in December 2022) would have been paid in full, with several millions of dollars recoverable by Maureen and Dr. Asterbadi.

*Third*, Paragraph 9 states that "The Debtor believes that the Avoidance Actions are of inconsequential value to the estate. Further, the Debtor believes that the cost and litigation risk of pursuing the potential Avoidance Actions in this case would be burdensome to the estate relative to the potential recoveries for the benefit of creditors." This was written by Whiteford Taylor and based upon its analysis. Indeed, they spent at least $40,000 analyzing and advising Zachair DIP on the matter. *See supra* p.7-8.

### D.    Valuations of the Property Per the Court Record

Plaintiff's contention that Mrs. Asterbadi on December 22, 2021, knew or should have known that the value of the Property was less than the $6.25 million in total debts *plus the $3 million in professional fees that would be incurred by December 2022*, is at odds with not only the representations in the Abandonment Notice itself, but the Court's record, which is (in part) as follows:

- **July 20, 2020: $19,300,00 to $22,100,00** FMV per **Expert Report**. *See* MCDE 88-1 (p. 6 of 98).

- **July 27, 2021: $16,000,000** per **First Sale Order** approving sale to JP Land. *See* MCDE 235 (page 25 of 74).

- **July 1, 2022: $17,000,000 (maximum) and $10 million minimum** per Second Sale Order conditionally approving sale to NVR.  See MCDE 343/343-1 (p. 11 of 56). [10]

- **August 23, 2022: $17,000,000** per Plan Projections prepared and filed by Zachair DIP's legal and financial professionals.  *See* MCDE 360.

Under all scenarios through August 23, 2022 – *20 months after the Abandonment Notice was filed* – all creditors and professionals were projected to get paid in full. That said, as discussed below, the Court need not actually resolve whether Mrs. Asterbadi knew or believed something different as of December 22, 2022 in order enter judgment in her favor on Count II.

### III.    UNDISPUTED MATERIAL FACTS

Solely for the purposes of this Motion, the facts below are undisputed. Plaintiff will not be able to submit a declaration (or point to any specific or credible facts) to the contrary.

1.      Mrs. Asterbadi is 75 years of age.  She is not a lawyer, has not received any formal legal education, and does not understand (and has never understood) how a chapter 11 bankruptcy proceeding works.  This includes not understanding what "abandonment" means or how it works

---

[10]  Approximately 9-10 months after the Abandonment Notice was filed, NVR unexpectedly (at least from Dr. Asterbadi's perspective) reduced its proposed purchase price to a maximum of $7.5 million based upon density concerns (meaning how many residential units could be built on the Property). Undersigned share two observations with the Court. *First*, even at the $7.5 million ultimate sales price (fall 2022), prepetition creditors would be paid in full but for the $3 million in professional fees. This should be recognized for what it is – an effort to hold Mrs. Asterbadi responsible for the decisions of the professionals to shift value away from creditors and to themselves, rather than searching for alternative solutions, including Sub Chapter V. Second, despite advising the Court about its alleged density concerns in October 2022, NVR turned around after the sale and sought density volumes that were more consistent with its July 1, 2022 offer, as well as the July 20, 2020 Harvey Report.

in a bankruptcy proceeding. Her first exposure to the principle of bankruptcy abandonment was upon retaining her current counsel in the case.  *See* Declaration of Maureen B. Asterbadi in Support of Motion for Summary Judgment on Count II ("**MBA Dec**.") at ¶¶ 1, 2, 7, 8.

2.      The January 6, 1994, Articles of Incorporation of Zachair name Mrs. Asterbadi as a director.  MBA Dec. ¶3.

3.      At no time prior to the Petition Date was Mrs. Asterbadi involved in the day-to-day affairs and operations of Zachair, nor did she make business or other decisions for Zachair. From time to time, Mrs. Asterbadi was asked by Dr. Asterbadi to execute certain documents as a director of Zachair. MBA Dec. ¶¶ 4-5.

4.      On January 17, 2020, the Petition was filed. At no time during the Zachair DIP bankruptcy proceeding did the Court designate Mrs. Asterbadi under Federal Bankruptcy Rule 9001 or otherwise.

5.      Dr. Asterbadi was appointed to act as Zachair DIP's sole authorized representative in the Bankruptcy Case. Compl. ¶ 10, 34; *see also* Bankruptcy Resolution attached to the Petition. MCDE 1 (pp 23-24).

6.      The Bankruptcy Resolution did not authorize Mrs. Asterbadi to take any actions in connection with, for, or on behalf of Zachair DIP.  *Id.*

7.      At no time after the Petition Date was Mrs. Asterbadi asked by Dr. Asterbadi, Zachair DIP's legal counsel, or any other Zachair DIP professional to be involved in the day-to-day affairs and operations of Zachair DIP (or Zachair), nor did anyone ask her to make business or other decisions for Zachair DIP (or Zachair). MBA Dec. ¶¶ 7, 11.

8.     At no time after the Petition Date was Mrs. Asterbadi involved in the day-to-day affairs and operations of Zachair DIP (or Zachair), nor did she ever make any business or other decisions for Zachair DIP (or Zachair).  MBA Dec. ¶¶ 7, 11.

9.     On December 22, 2021, the Abandonment Notice was filed based upon the premises and representations made therein. MCDE 301.

10.    Mrs. Asterbadi was never consulted by Dr. Asterbadi, Zachar DIP's bankruptcy counsel, any other counsel, or anyone regarding any of the analyses, premises, assumptions, and/or representations contained in the Abandonment Notice. MBA Dec. ¶¶ 9-11.

11.    Before its filing on December 22, 2021, and until receipt of the Complaint in early 2023, Mrs. Asterbadi was unaware that the Abandonment Notice was being prepared and would be filed and had no conversations or communications with anyone regarding the Abandonment Notice. MBA Dec. ¶ 9-11.

12.     While Mrs. Asterbadi acknowledges the existence of the certificate of service accompanying the Abandonment Notice, she has no recollection of receiving or reading and understanding the Abandonment Notice when it was filed or at any time thereafter. MBA Dec. ¶ 10.

## IV.    ARGUMENT

### A.    Standard of Review

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hamid v. United States*, 247 F. Supp. 3d 131, 134 (D.D.C. 2017) (citation omitted). "Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment." *Klayman*

*v. Judicial Watch, Inc.*, 628 F. Supp. 2d 112, 124 (D.D.C. 2009) (citation omitted). "To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party." *Id.* (citing *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987)). The Court "must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986)). Under the applicable standard, judgment should be entered on a summary basis for Mrs. Asterbadi as to Count II inasmuch as the law does not support Plaintiff's claim and the material facts are not genuinely in dispute.

### B.     The Court Should Enter Judgement for Mrs. Asterbadi on Count II

In Count II Plaintiff seeks a judgment against Mrs. Asterbadi for breach of fiduciary duty as a result of Mrs. Asterbadi's having allegedly filed the Abandonment Notice. For at least the following reasons, the Court should grant summary judgment in favor of Mrs. Asterbadi (as to her) on Court II of the Complaint.

### 1.     Mrs. Asterbadi Had Nothing to do With the Abandonment Notice

There is no genuine dispute that Mrs. Asterbadi did not file (under any definition of the term "file") the Abandonment Notice. As such, even assuming for the sake of argument that the properly noticed and filed Abandonment Notice (the analyses and basis for which Zachair DIP received more than $40,000 of legal advice on) could constitute a basis for liability (which is

unlikely, as a matter a law),[11] as a matter of fact, Mrs. Asterbadi did not contribute to the substance

of or the decision to file the Abandonment Notice. Inasmuch as she had literally nothing to do with

the Abandonment Notice, the Court should (a) reject the Complaint's contentions that Mrs.

Asterbadi filed it and should be liable for having done so, and (b) enter judgment for Mrs.

Asterbadi (as to her) on Count II. This should end the Court's inquiry on Count II as to Mrs.

Asterbadi.

     **2.    Mrs. Asterbadi Had No Authority to File the Abandonment Notice or Take Any Other Action on Behalf of Zachair DIP**

In addition, Mrs. Asterbadi (who pre bankruptcy had never been involved in Zachair's day-

to-day and other affairs) had no authority to act on behalf of Zachair DIP as the newly created

entity upon the Petition Date. Assuming for the sake of argument that Mrs. Asterbadi had filed the

Abandonment Notice, she would have done so without any legal authority because the Bankruptcy

Resolution provided that the sole decision maker for Zachair DIP was Dr. Asterbadi. Any action

taken by Mrs. Asterbadi outside her legal authority would likely have been brought to the Court's

attention and determined to be null and void. Thus, the Court should rule in favor of Mrs. Asterbadi

on Count II based upon her lack of legal authority to act on behalf of Zachair DIP.

     **3.    The Analysis, Recommendation and Decision by Whiteford Taylor and Zachair DIP to File the Abandonment Notice Cannot be Imputed to Mrs. Asterbadi**

Consistent with the foregoing, undersigned counsel has located no decision where a pre

bankruptcy director (a) who is not designated by a bankruptcy resolution to act for or on behalf of

---

[11] *See e.g., Kingsville Dodge, LLC v. Almy*, 2007 WL 2332699 (2007) (finding that directors of a closely held business were not liable for breach of fiduciary duty where actions allegedly constituting such breach were the result of directors' reliance upon the expertise of legal counsel).

the debtor in possession, (b) who is not designated by the bankruptcy court under Bankruptcy Rule 9001, and (c) who post-petition never acted for or on behalf of the debtor in possession, was nevertheless held liable for breach of fiduciary duty based on affirmative acts taken by a separate director (*i.e.,* the one authorized by the bankruptcy resolution to act for the debtor in possession), based upon the paid-for analysis and advice of chapter 11 counsel. In other words, we could not find legal authority to support the proposition that the actions taken by Dr. Asterbadi (based on the authority of the Bankruptcy Resolution and the analysis and advice of Whiteford Taylor), was sufficient to render Mrs. Asterbadi liable where she had no authority under the Bankruptcy Resolution to do so, and as a matter of fact, took no such action.

The closest authority we could locate is, sensibly, to the contrary. The court in *American Savings & Loan Assn. v. Weber*, 99 B.R. 1001 (Bankr. D. Utah 1989) addressed the alleged misuse of cash collateral by Jack and Sharon Weber during the chapter 11 of Weber Trucking, Inc. While both Jack and Sharon Weber were directors and officers of the corporate debtor ("**Weber Trucking DIP**"), Mr. Weber (a) was aware of and violated the limitations on use by Weber Trucking DIP of its cash collateral, (b) attended Weber Trucking DIP's Section 341 meeting, (c) signed Weber Trucking DIP's disclosure statement, (d) ran the day to day operational and other activities of Weber Trucking DIP, and (e) otherwise solely made the business decisions for Weber Trucking DIP. Mrs. Weber, in contrast, was not involved in these matters for Weber Trucking DIP, and "her actual involvement was clerical and under the exclusive supervision of Jack Weber." 99 B.R. at 1018. As such, the Court did not hold Mrs. Weber responsible for the affirmative actions taken by Mr. Weber in the Weber Trucking DIP chapter 11 proceeding.

In contrast to Mrs. Weber, who was actively involved with Weber Trucking albeit on clerical matters, Mrs. Asterbadi performed no services for and undertook no activities in

connection with or on behalf of Zachair DIP.  Like Mrs. Weber, however, Mrs. Asterbadi did not

attend Zachair DIP's 341 meeting, nor did she sign or have anything to do with any of the pleadings

and papers filed in the Zachair DIP chapter 11 proceeding, most notably the Notice of

Abandonment. Thus, even if the Complaint in this case stated that Mrs. Asterbadi (as a non-actor)

should be held liable for the affirmative actions taken by Dr. Asterbadi for and on behalf of Zachair

DIP, which it plainly does not, following the Weber Truck reasoning would lead to the conclusion

(based upon the undisputed facts) that Mrs. Asterbadi should not be held responsible for Dr.

Asterbadi's role in Zachair DIP's filing of the Abandonment Notice. Based on this analysis the

Court should grant summary judgment in favor of Mrs. Asterbadi (as to Mrs. Asterbadi) on Count

II.

### 4.    Equity Requires that Count II not be Used as an End Round the Proper Waiver and Abandonment of the Avoidance Actions Which Were Approved by Creditors

Creditors and parties in interest knowingly waived the alleged value of the Avoidance

Actions.[12] The estate's decision to waive the Avoidance Actions was contained in the first

Disclosure Statement, [MCDE 225], and approved by the Court before the Abandonment Notice

was filed. Every version of the Disclosure Statement and Plan provided for the waiver of the

Avoidance Actions. For nearly 18 months, the estate's waiver of the Avoidance Actions was one

of the most widely published items in the entire chapter 11. Despite dozens of opportunities to do

---

[12] As previously indicated Whiteford Taylor undertook extensive and costly analyses of the Avoidance Actions.  See MCDE 2268-1 at 189, MCDE 425 at 16, and MCDE 425-1, at 61-65. This was the basis for their statements in paragraph 9 of the Abandonment Notice that they "are of inconsequential value to the estate," and that the "cost and litigation risk . . . would be burdensome to the estate . . ." MCDE 301 at p. 4.  In contrast, there is no evidence that Plaintiff has undertaken any different or better analysis that would lead him to results different than those reached by Whiteford Taylor.

so, not one single creditor objected. Indeed, Sandy Spring Bank, Zachair DIP's largest secured and largest undisputed creditor, filed a competing disclosure statement and plan that provided for a waiver of the Avoidance Actions. *See* MCDEs 336-337. Under all of the circumstances, it would be inequitable and wrong to allow Plaintiff to obtain a "back door" recovery of the very Avoidance Actions that the estate, through a lengthy and well-publicized process (including via the Disclosure Statements approved by the Court), waived and abandoned and that creditors knowingly accepted.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant Maureen Asterbadi respectfully requests that the Court grant summary judgment by entering judgment in favor of Mrs. Asterbadi and against Plaintiff Lawrence Katz on Count II (as to Mrs. Asterbadi only).

Dated: November 3, 2023

Respectfully submitted,

/s/ Patrick Potter
Patrick Potter (D. Md. Bar No. 08445)
Cynthia Cook Robertson (D. Md. Bar No. 18083)
Meaghan Murphy (D. Md. Bar No. 20697)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone: 202-663-8000
Fax: 202-663-8007
patrick.potter@pillsburylaw.com
cynthia.robertson@pillsburylaw.com

*Attorneys for Defendant Maureen Asterbadi*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 3rd day of November 2023, the foregoing Motion for Summary Judgment and the accompanying Memorandum of Law, Exhibits (if any), Declaration, and proposed Order were served by electronic filing the following counsel of record through the Court's electronic filing system:

Lawrence A. Katz
Kristen E. Burgers
Robert R. Vieth
Mihir Elchuri
HIRSCHLER FLEISCHER
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Telephone: (703) 584-8900
Facsimile: (703) 584-8901
Email: lkatz@hirschlerlaw.com
    kburgers@hirschlerlaw.com
    rvieth@hirschlerlaw.com
    melchuri@hirschlerlaw.com

Steven L. Goldberg
MCNAMEE HOSEA P.A.
6411 Ivy Ln Suite 200
Greenbelt, MD 20770
Telephone: (301) 441-2420
Email: sgoldberg@mhlawyers.com

*/s/Patrick J. Potter*
Patrick J. Potter

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | |
|---|---|
| IN RE: | |
| ZACHAIR, LTD., | Case No. 20-10691-LSS |
| Debtor. | (Chapter 11) |
| LAWRENCE A. KATZ, Plan Administrator, | |
| Plaintiff | |
| v. | Adversary Proceeding 23-00014 |
| NABIL J. ASTERBADI | Jury Trial Demanded |
| and | |
| MAUREEN ASTERBADI | |
| Defendants. | |

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
### AS TO COUNT II IN FAVOR OF MAUREEN ASTERBADI

Upon consideration of Defendant Maureen Asterbadi's Motion for Summary Judgment as

to Count II, any opposition thereto, Mrs. Asterbadi's Reply, and all supporting documents and the

record as a whole, it is, by the United States Bankruptcy Court for the District of Maryland hereby

**ORDERED**, that:

1. Defendant Maureen Asterbadi's Motion is **GRANTED**; and it is further

2. Count II of Plaintiff's Complaint is **DENIED WITH PREJUDICE AS TO MRS. ASTERBADI, AND THEREFORE DISMISSED AS TO HER**.

cc:    Patrick J. Potter
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone: 202.663.8928
Email:  patrick.potter@pillsburylaw.com

Cynthia Cook Robertson
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone: (202) 663-9256
Email: cynthia.robertson@pillsburylaw.com

Lawrence A. Katz
HIRSCHLER FLEISCHER, P.C.
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Telephone: (703) 584-8900
Email: lkatz@hirschlerlaw.com

Kristen E. Burgers
HIRSCHLER FLEISCHER, P.C.
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Telephone: (703) 584-8900
Email: kburgers@hirschlerlaw.com

Steven L. Goldberg
MCNAMEE HOSEA P.A.
6411 Ivy Ln Suite 200
Greenbelt, MD 20770
Telephone: (301) 441-2420
Email: sgoldberg@mhlawyers.com

Office of the United States Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770

**END OF ORDER**