IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

|  |  |  |
|---|---|---|
| *In re:* | ) | |
| | ) | Case No. 20-10691-TJC |
| ZACHAIR, LTD., | ) | |
| | ) | Chapter 11 |
| Reorganized Debtor. | ) | |
| | ) | |
| LAWRENCE A. KATZ, Plan Administrator | ) | |
| for the Bankruptcy Estate of Zachair, Ltd., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 23-00014 |
| v. | ) | |
| | ) | |
| DR. NABIL J. ASTERBADI, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
AS TO COUNT II FILED BY MRS. ASTERBADI**

Plaintiff Lawrence A. Katz ("Plaintiff" or "Plan Administrator"), formerly the Chapter 11 Trustee and now the plan administrator under the confirmed chapter 11 plan of Zachair, Ltd. (the "Debtor"), hereby opposes (the "Opposition") the Motion for Summary Judgment as to Count II ("Motion") filed by Defendant Maureen Asterbadi (the "Defendant").

## I.    INTRODUCTION

Mrs. Asterbadi's motion is directed to Count II of the Complaint.  That count seeks recovery from Mrs. Asterbadi, as a director of Zachair when it was a debtor-in-possession, for the Debtor's decision to abandon legitimate and potentially valuable claims against herself and her family members.  The abandonment decision was a self-interested transaction that is

actionable as a breach of Mrs. Asterbadi's fiduciary duties of loyalty and care.

Claims for breach of fiduciary duty are notoriously fact dependent, yet Mrs. Asterbadi's summary judgment motion comes before hardly any discovery has taken place. At this point there has been only partial document production, and zero depositions have been taken -- including the deposition of Mrs. Asterbadi. Thus, the motion is premature and must be denied for that reason alone. But the motion is also misguided. The motion largely depends on Mrs. Asterbadi's *inattention* to corporate matters, wrongly suggesting that her lack of involvement protects her from liability. The motion also is based on a distorted portrayal of the decision-making process leading up to the abandonment determination. In other respects the motion is strikingly devoid of citations to legal authorities, urging the Court to adopt positions that have no foundation. For a number of reasons the motion must be denied in its entirety.

## II.  STATEMENT OF FACTS

### A.  Zachair and its owners and directors, the Asterbadis.

Zachair is a Maryland corporation, and all of its stock is owned by Mrs. Asterbadi and her husband, Nabil Asterbadi ("Dr. Asterbadi"), as tenants by the entireties. Declaration of Maureen Asterbadi ("M. Asterbadi Dec."), ¶ 3 (attached as an exhibit to the Memorandum of Law in Support of Motion for Summary Judgment as to Maureen Asterbadi on Count II). Dr. and Mrs. Asterbadi are the only two directors of Zachair. Declaration of Bradford F. Englander ("Englander Dec."), ¶ 2 (attached hereto as Exhibit A). Zachair was principally managed by Dr. Asterbadi throughout its existence, including as debtor-in-possession. M. Asterbadi Dec., ¶¶ 3-4; Englander Dec., ¶ 3. As a company owned by a husband and wife, Zachair paid many of its owners' personal bills from its corporate bank accounts. Englander Dec., ¶ 6, 15-16. The Asterbadis drove cars owned or leased by Zachair; they paid their housekeeper with Zachair funds; they had Zachair pay their personal credit card bills; they had Zachair pay their personal

taxes; and to this day Zachair's tax returns show unpaid loans to shareholders (that is, the Asterbadis) of some $831,000.  Englander Dec., ¶¶ 15-16; U.S. Income Tax Return for an S Corporation (Form 1120S, Schedule L, Line 7) for Zachair, Ltd., for the tax years 2016 through 2022 (inclusive)[1]; Schedule A/B, 71 (see also corresponding reference in the Global Notes and Statement of Limitations, Methods, and Disclaimers Regarding the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs [Dkt. No. 11]).[2]

Although a director of the company, Mrs. Asterbadi has not been active in managing the company's affairs.  M. Asterbadi Dec., ¶ 4.  Mrs. Asterbadi seems proud of her lack of involvement in the company, and her motion is largely based on her inattention to corporate affairs.  She has "not and never [has] been involved in any of the operations, decisions or day-to-day affairs of managing" Zachair.  M. Asterbadi Dec., ¶ 4. On occasion she was presented with documents to review "in [her] role as director," but often did not even "read them," and sometimes did not "understand what [she] was signing."  M. Asterbadi Dec., ¶ 5.  This inattention continued once Zachair filed its Petition.  Mrs. Asterbadi "did not make any decisions on behalf of Zachair as Debtor in Possession," and "was not consulted or advised of any of the decisions made for Zachair during the course of the bankruptcy."  M. Asterbadi, ¶¶ 7, 11.

**B.      Zachair's Property.**

Zachair owned an airfield in Prince Georges County, Maryland, comprising hundreds of acres.  Schedule A/B, 55.1 [Dkt. No. 11].  In decades past, the property owned by Zachair had been mined for sand and gravel, leaving large cavities on the property.  United States Trustee's

---

[1] The income tax returns are not attached as exhibit due to their length but may be presented as exhibits at the hearing on the Motion.

[2] All docket numbers refer to docket entries in the main bankruptcy case (*In re Zachair, Ltd.*, Case No. 20-10691-TJC).

Motion to Appoint Chapter 11 Trustee [Dkt. No. 394] ("Trustee Motion"), ¶ 9.  In the years

leading up to the filing of the Petition and thereafter, Zachair made most of its money by

granting permission to construction companies and others to dump fill dirt on the property,

filling the cavities.  *Id.*  Zachair charged companies to allow them to dump the fill, and much of

that money funded the Asterbadis' lifestyle.  Englander Dec., ¶ 7.  The fill activities were

problematic.  As was revealed during the attempts to sell the property, Zachair overfilled

portions of the property and did not properly compact the fill, leaving much of the site

undevelopable.  Englander Dec., ¶ 7.

### C.    The PD Hyde Litigation, the Bankruptcy Resolution, and the Petition.

In 2013, Zachair entered into a contract to sell Zachair's large real estate holdings to a

developer, PD Hyde Field LLC ("PD Hyde").  Second Amended Disclosure Statement with

respect to Debtor's Second Amended Plan of Reorganization [Dkt. No. 333] ("Disclosure

Statement"), Section 2.03 i, p. 5.  In 2018, PD Hyde filed suit against Zachair and Dr. Asterbadi

for claims relating to that contract.  *Id.*  In general, PD Hyde contended that the presence and

type of the fill dirt on the property violated the contract.  It was largely this lawsuit, and its

associated costs, that caused Zachair to file its Petition.  Englander Dec., ¶ 4.

The Petition was filed on January 17, 2020.  On the eve of filing the Petition, on January

13, 2020, the Zachair directors, Dr. and Mrs. Asterbadi, signed two corporate resolutions: (a) a

resolution which reaffirmed that Zachair had two directors, Dr. and Mrs. Asterbadi  (the

"Director Resolution")[3] and (b) a resolution  which authorized Dr. Asterbadi, as the company's

"Designated Representative," to file the Petition and other papers (the "Bankruptcy Resolution")

---

[3] When Zachair was formed, the Articles of Incorporation identified three directors: Dr.
Asterbadi, Mrs. Asterbadi, and Kathy Lane.  Ms. Lane had not been active in Zachair for many
years.  The Director Resolution effectively removed Ms. Lane as a director and reaffirmed that
Dr. and Mrs. Asterbadi are both directors.

in the Chapter 11 case (the "Bankruptcy Case"). The Director Resolution is attached hereto as Exhibit B, and the Bankruptcy Resolution is attached as Exhibit 1 to the M. Asterbadi Dec. The Bankruptcy Resolution, which was signed by Mrs. Asterbadi, did not purport to make further changes to Zachair's board of directors. To the contrary, it contemplated additional actions by the board, noting that the board may designate other representatives in the future to execute and file papers on Zachair's behalf. Mrs. Asterbadi did not resign in conjunction with the filing of the Petition, or at any time, even though she could have easily done so as part of the Director Resolution. According to her Declaration, she remains a director of the company. M. Asterbadi Dec., ¶ 4.

### D. The JP Land Contract, the Potential Avoidance Actions and the Troubling Information from DPIE.

In the Bankruptcy Case, Zachair was represented by the law firm Whiteford, Taylor & Preston, LLP ("Whiteford"), with Bradford F. Englander of Whiteford serving as the lead counsel for the Debtor. Englander Dec., ¶ 1. Zachair's primary objective in the Bankruptcy Case was to sell its property to pay its creditors. Englander Dec., ¶ 5. On September 7, 2021, the Debtor filed its First Amended Plan of Reorganization. That First Amended Plan proposed that funds to pay creditors would be generated by the sale of Zachair's real property pursuant to a contract (the "Sale Contract") between Zachair and JP Land Holdings, LLC ("Purchaser"). Englander Dec., ¶¶ 5-6.

The purchase price under the Sale Contract was $16 million, subject to adjustments ("Purchase Price"). Englander Dec., ¶ 6. At that Purchase Price the sale proceeds were projected to be sufficient to pay in full all allowable claims of Zachair's creditors. Englander Dec., ¶ 6. Closing under the Sale Contract was conditioned upon completion of Purchaser's due diligence. Englander Dec., ¶ 6.

As noted, over the years Zachair's funds had been used to pay many of the Asterbadis' personal expenses. Englander Dec., ¶¶ 6, 15-16. Of course, in the Bankruptcy Case this could lead to potential actions by the estate to recover some of those payments, in addition to other potentially avoidable transfers made by Zachair prior to the bankruptcy filing (collectively, "Avoidance Actions"). Because the Purchase Price under the JP Land Sale Contract was sufficiently high, the First Amended Plan proposed to release all Avoidance Actions that were available to Zachair. Englander Dec., ¶ 6. The proposed release in the First Amended Plan was feasible because creditors would not have benefitted from the prosecution of Avoidance Actions had the sale of the property occurred at the Purchase Price, which would have permitted payment in full of all creditor claims. Englander Dec., ¶ 6.

The First Amended Plan began to unravel as the Purchaser conducted its due diligence investigation into the fill activities that Zachair had permitted on its property. Specifically, on or about November 10, 2021, the Purchaser met with representatives of the Prince George's County Department of Permitting, Inspections and Enforcement ("DPIE"). The representatives of DPIE told the Purchaser that, due to the nature of the fill dirt, DPIE would not grant permits for construction of single-family residential units on large portions of the Debtor's property. Englander Dec., ¶ 7. DPIE's position cast serious doubt about Purchaser's ability to develop large portions of the property for residential use. These doubts raised concerns about the economic viability of Purchaser's development plans and, thus, created serious concerns about the Purchaser's willingness to proceed under the Sale Contract at the agreed Purchase Price, or at all. Englander Dec., ¶ 7. All of a sudden, the Avoidance Actions took on real significance.

To try to save the Sale Contract, the Debtor agreed to extend the Purchaser's study period. But all of this was occurring shortly before the two-year anniversary of the Petition Date,

January 17, 2022, the date by which the Debtor would have had to file complaints commencing the Avoidance Actions. If the sale did not proceed substantially as set forth in the Sale Contract, pursuit of the Avoidance Actions may have been necessary to provide for the payment of creditor claims. Englander Dec., ¶ 7-9.

      E.      **The Rejection of Counsel's Advice, and the Abandonment of the Avoidance Actions.**

After receiving the problematic information from DPIE, the Debtor's counsel, Whiteford, engaged Dr. Asterbadi in several conversations, reminding him of his fiduciary duties as a director of the Debtor, and his and the Debtor's fiduciary duties to creditors, with respect to the need to preserve assets of the estate, specifically the Avoidance Actions. Englander Dec., ¶ 10. Whiteford advised the Debtor to authorize Whiteford to seek tolling agreements from potential targets of the Avoidance Actions and, if the targets did not agree to sign tolling agreements, to authorize Whiteford to file complaints against those targets. Englander Dec., ¶ 10. Despite the impending deadline, Dr. Asterbadi refused to authorize Whiteford to seek tolling agreements or to file the complaints. Dr. Asterbadi explained to Whiteford that a request to sign a tolling agreement would surprise some of his family members, who were unaware that they were exposed to liability on account of the Debtor's bankruptcy. The Debtor, through Dr. Asterbadi, rejected Whiteford's advice with respect to preservation of claims of the estate. Englander Dec., ¶ 11.

Thus, by rejecting advice of counsel, the Debtor created a circumstance in which, absent alternative action, the Avoidance Actions might have expired by operation of law, without disclosure to, or approval of, creditors or the Court. Whiteford tried to come up with a fallback solution that might be acceptable to Dr. Asterbadi and at least ensure full disclosure to the Court and creditors, and provide an opportunity for assertion of the Avoidance Actions prior to the

two-year deadline.  The fallback solution was to prepare a detailed notice of abandonment

pursuant to Bankruptcy Code section 554 and Bankruptcy Rule 6007.  Englander Dec., ¶¶ 12-13.

Whiteford reached out to the personal counsel of Dr. Asterbadi who, at least at times, also

represented Mrs. Asterbadi in the Bankruptcy Case.[4]  Englander Dec., ¶ 3, 14.  In those

conversations Whiteford discussed the Avoidance Actions, the Debtor's duties, the fiduciary

duties of the Debtor's directors,  and the proposed fallback approach of abandoning the claims.

Whiteford provided to Dr. Asterbadi and his personal counsel summaries of payments

comprising a portion of the Avoidance Actions:

**Total Payments to or For the Benefit of Insiders of**
**Zachair, Ltd. Within 2 Years of the Petition Date**

| Insider | Payments to or for the benefit of Insider |
|---|---|
| Maureen Asterbadi | $181,115.75 |
| Nabil Asterbadi | $800,045.05 |
| Joint Maureen and Nabil Asterbadi | $264,307.99 |
| S. Asterbadi (sister of Nabil Asterbadi) | $42,764.45 |
| Marc and Mary Doctors (sister and brother-in-law of Maureen Asterbadi) | $186,176.29 |
| **Total:** | **$1,477,804.36** |

Englander Dec., ¶ 15.

Whiteford also identified the following payments that Zachair made within two years of

the Petition Date to the below non-insider transferees:

**Total Payments to Non-Insider Transferees Within 2 Years of the Petition**
**Date For Which No Corresponding Value Was Received by the Debtor**

| Non-Insider Transferee | Total Transfers |
|---|---|
| American Express | $183,197.62 |
| Bank of America Card Services | $67,100.55 |

---

[4]  Dr. Asterbadi's counsel was Mr. Tarkenton of Womble, Bond Dickinson (US) LLP.  Mr.
Tarkenton filed a proof of claim on behalf of Mrs. Asterbadi (Proof of Claim No. 20-1).  Ex. C.

| | |
|---|---|
| Barclaycard | $28,767.31 |
| Capital Investment & Development | $10,000.00 |
| Chase | $65,577.38 |
| Cincinnati Life Insurance | $46,252.36 |
| Citi Mortgage | $219,555.23 |
| D.C. Treasury | $7,939.65 |
| David Lamb, Esq. | $12,000.00 |
| Discover | $12,689.25 |
| Fransesca Wong | $41,000.00 |
| Holston MacDonald | $16,410.00 |
| Meyers Rodbell Rosenbaum | $10,000.00 |
| Toyota Financial Services/Toyota Motor Credit | $17,280.47 |
| United States Treasury | $215,073.40 |
| **Total:** | **$952,843.22** |

Englander Dec., ¶ 16.

On December 20, 2021, Mr. Englander of Whiteford discussed these charts and the

Avoidance Actions with Dr. Asterbadi and Mr. Tarkenton on a conference call.  In advance of

the call, Mr. Englander prepared an outline relating to the Debtor's fiduciary duties and the

potential Avoidance Actions.  Englander Dec., ¶¶ 18-19 and Ex. A.  The outline was prepared

*after* Dr. Asterbadi had made it clear that he did not authorize Whiteford to pursue tolling

agreements or to file Avoidance Actions on the Debtor's behalf.  Recognizing this, the outline

summarizes Whiteford's fallback recommendation to file a notice of abandonment of the

Avoidance Actions.  Englander Dec., ¶ 19.

After several discussions among Whiteford, Dr. Asterbadi and his personal counsel, Dr.

Asterbadi authorized Whiteford to file the Notice of Abandonment, which was filed on

December 22, 2021 [Dkt. No. 301].

The Notice of Abandonment was mailed to Mrs. Asterbadi and others on December 22,

2021.  Englander Dec., ¶ 22.  The Notice required any person who objected to the abandonment

of the Avoidance Actions to file and serve an objection within 14 days.  No interested party filed

or served an objection to the abandonment within that 14-day deadline.  The Court did not hold a hearing with respect to the abandonment, nor did it enter an order confirming the abandonment. *See* Fed. R. Bankr. 6007(a).  Englander Dec., ¶ 23.  Thus, after rejecting counsel's advice, the Debtor abandoned potentially valuable Avoidance Actions against Mrs. Asterbadi and her family members, among others.

### F.    The NVR Contract and the Hearing Before Judge Catliota.

The problems with the fill dirt on the Zachair property, which resulted in short term funds for Zachair that were spent by the Asterbadis, plagued the remainder of the Bankruptcy Case.  JP Land, the Purchaser under the original Sale Contract, backed out.  Disclosure Statement, Section 4.10, p. 19.  The Debtor returned to marketing the property, and ultimately signed a contract with NVR, Inc. ("NVR") on June 1, 2022.  *Id.*  That initial NVR contract called for an upfront payment toward a total purchase price of between $12 million and $17 million, depending on the extent of development allowed on the property.  *Id.* at p. 20.  But the contract was contingent on a satisfactory study period, and in October 2022, NVR stated that it would let the contract expire and instead rely on its all cash bid of $7.5 million made pursuant to the approved bid procedures for the auction of the property.  Emergency Motion to (I) Enforce the Court's Order (A) Conditionally Approving the Sale of the Debtor's Property Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Conditionally Approving the Contract, (C) Approving the Bid Procedures, (D) Scheduling Bid Deadline, Auction and Sale Hearing, (E) Approving Form and Manner of Notice Thereof, and (F) Granting Certain Relayed Relief; and (II) Declare NVR, Inc. ass Prevailing Bidder [Dkt. No. 383] ("NVR Motion").  In addition to the NVR offer, the Debtor received another offer for $6.5 million.  Transcript of October 7, 2022 Auction Proceeding ("Auction Tr."), 7:9-8:6 (Ex. D).  With two offers in hand, the Debtor proceeded with the Court-authorized auction of the property on October 7, 2022.  *Id.*, 4:5-9.  When it appeared that there

would be no higher bid, Dr. Dr. Asterbadi, dissatisfied with the state of the offers, called off the auction. *Id.*, 10:4-5.

NVR promptly filed the NVR Motion, by which it sought entry of an order declaring  that it was the prevailing bidder.  The motion was heard before Judge Catliota on October 19, 2022. Judge Catliota rejected the Debtor's request for more time to market the property and approved the sale to NVR.

According to the transcript of Judge Catliota's ruling, at that hearing Dr. Asterbadi testified and admitted that he had withdrawn from the Debtor most of the funds generated by the fill activities. These withdrawals were spent for the benefit of himself and Mrs. Asterbadi.  See Transcript of Ruling ("Tr.") at 9 (Ex. E).  The Debtor requested to delay the sale until it could negotiate a term sheet with proposed bidders, a request the Judge firmly denied.  Tr. at 14.  The Debtor's proposed term sheet would have allowed the Asterbadis, under certain conditions, to retain two valuable Mercedes-Benz vehicles owned by Zachair; would have released the Asterbadis from all claims  --  including $831,000 in shareholder loans identified in the then-current draft of the disclosure statement  --  upon approval of the Plan; and would have allowed future distributions to be paid to the Asterbadis from promissory notes.  Tr. at 11.  Judge Catliota found these terms to be "very problematic and potentially mischievous," and he rejected the Debtor's term sheet proposal altogether.  Tr. at 11, 14.  Judge Catliota concluded that "the Debtor has offered no credible reason for not accepting the NVR bid contract other than that Dr. Asterbadi wants a chance to improve his personal financial conditions."  Tr. at 14.

At the hearing Dr. Asterbadi testified that even if the Court approved the sale to NVR, he would not participate in the sale process.  At the conclusion of the hearing, Judge Catliota invited motions to address Dr. Asterbadi's behavior, including a motion "to enforce the settlement

agreement, appoint a Chapter 11 Trustee, convert to Chapter 7, appoint a plan administrator, whatever [the parties] deem appropriate." Tr. at 16. On October 27, 2022, the U.S. Trustee's office filed the Trustee Motion. Before the Trustee Motion was heard, Dr. Asterbadi finally relented and consented to the appointment of the trustee. On November 10, 2022, Judge Catliota appointed Mr. Katz as the Chapter 11 Trustee, and on November 15, 2022, the Court approved the Second Amended Plan, and Mr. Katz became the Plan Administrator.[5]

## III.    LEGAL STANDARD

Summary judgment is appropriate when the evidence in the record demonstrates that "there is no genuine dispute as to any material fact and the [defendants] are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The burden is on the moving party to submit "sufficient evidence to support its request for summary judgment." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574- 586-88 (1986)). Only then does any burden shift to the non-moving party. *Id.* And then the non-moving party must show only that there are genuine issues of material fact, precluding the entry of summary judgment. Fed. R. Civ. P. 56(a).

---

[5] Throughout her motion Mrs. Asterbadi is critical of the way counsel handled the Bankruptcy Case. One of her primary criticisms is that the Bankruptcy Case should have been converted to a case under Subchapter V of Chapter 11 of the Bankruptcy Code when the Subchapter V debt ceiling was raised to $7,500,000 on March 27, 2020. This criticism is unfounded. By the time Zachair became eligible for Subchapter V, it was two months into the Bankruptcy Case and had already committed to a path of reorganization/liquidation based on the sale of the property at a price sufficient to pay all creditors in full. Changing course at this juncture was not feasible and would have been expensive. Moreover, at the time, no one could have anticipated the problems that would later arise with the sale of the property.

IV.    **ARGUMENT**

    A.    **Mrs. Asterbadi Owed Fiduciary Duties to the Debtor in Possession and Its Creditors Under Federal Law and Maryland Law.**

        1.    **Mrs. Asterbadi Retained Her Fiduciary Obligations to Zachair as the Debtor in Possession, and to Its Creditors, During the Pendency of the Bankruptcy Case.**

One of the primary arguments raised by Mrs. Asterbadi is that, although Mrs. Asterbadi is and always has been a director of Zachair, once Zachair filed the Petition, the "Zachair DIP" became a "newly-created entity as of the Petition Date" and Mrs. Asterbadi had no role or authority with respect to this new entity. Motion at 1, n.2, and 3. Continuing, Mrs. Asterbadi argues that because she had no role in the "Zachair DIP," she cannot be liable for anything related to the abandonment. Motion at 14. There appear to be three bases for this theory. First is the proposition that the Zachair DIP was a completely new "legal entity." Second, she contends that the Bankruptcy Resolution vested all authority to act for the Zachair DIP in her husband, Dr. Asterbadi, thereby relieving her of any responsibility for actions taken during the pendency of the Bankruptcy Case. Finally, Mrs. Asterbadi suggests that under the circumstances of this case, Bankruptcy Rule 9001 absolves her of liability for breach of her duty. This theory is wrong as a matter of law.

Not surprisingly, Mrs. Asterbadi cites no case supporting the first leg of this theory, because all of the authorities refute it. First, in most respects the debtor-in-possession is not treated as a "different entity" than the pre-Petition debtor. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) ("For our purposes," involving whether the debtor in possession is a party to a collective bargaining agreement, "it is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition, but empowered by virtue of

the Bankruptcy Code to deal with its contracts and property in a manner it could not have employed absent the bankruptcy filing").[6] Citing *Bildisco,* Judge Harner refused to accept a suggestion "that the debtor in possession was a separate entity from the prepetition debtor and not bound by the prepetition debtor's actions," noting that "the U.S. Supreme Court has firmly rejected the separate or different entity theory." *Forest Capital, LLC v. Fischer Porter & Thomas, P.C. (In re Forest Capital, LLC),* 579 B.R. 56, 66 n. 11 (Bankr. D. Md. 2017).

Also, the Bankruptcy Code states that a debtor-in-possession has the same duties as a trustee. 11 U.S.C. § 1107. Because a corporate debtor-in-possession is not a natural person, the directors of a debtor-in-possession hold these duties. *National Convenience Stores v. Shields (In re Schepps Food Stores),* 160 B.R. 792, 797 (Bankr. S.D.Tex. 1993). As the Supreme Court has explained, directors of a debtor-in-possession retain their fiduciary obligations to shareholders, and in fact, those obligations are expanded to include duties to creditors. *Commodity Futures Trading Comm. v. Weintraub*, 471 U.S. 343, 355 (1985); *Wolf* v. *Weinstein*, 372 U.S. 633, 649-652 (1963). A director of a debtor-in-possession remains "under a fiduciary duty to act for the benefit of the estate," and if that duty is breached, the director "may be held personally liable for the losses suffered by the debtor." *Cohen v. UN-Ltd. Holdings, Inc. (In re Nelco, Ltd.)*, 264 B.R. 790, 811-812 (Bankr. E.D.Va. 1999).[7]

---

[6] Even the dissent in *Bildisco* agreed, rendering the justices unanimous on this point. *See* 465 U.S. at 544 ("The Court today properly rejects the 'new entity' theory")(Brennan, J., dissenting).

[7] *See also, Schepps Food Stores,* 160 B.R. at 797 (directors of a corporate debtor-in-possession "take[] on the heightened fiduciary obligations of the trustee," which include duties "not only to the debtor and its shareholders, but also all of the debtor's creditors"); *In re Curry & Sorensen*, 57 B.R. 824, 828 (9th Cir. BAP 1986)(the directors of a debtor-in-possession "bear essentially the same fiduciary obligation to creditors and shareholders as would a trustee for a debtor out of possession").

The second prong of Mrs. Asterbadi's theory rests on the Bankruptcy Resolution, but that document will not bear this weight. The Bankruptcy Resolution authorized Dr. Asterbadi to serve as the "Designated Representative" to file the Petition and other documents in connection with the Bankruptcy Case. This resolution, however, did not replace the board with Dr. Asterbadi as the single corporate decisionmaker, nor release Mrs. Asterbadi from her responsibilities. Indeed, the Bankruptcy Resolution was executed contemporaneously with the Director Resolution, which specifically reaffirmed Mrs. Asterbadi's role as a director of Zachair. Further, the Bankruptcy Resolution states that the "Board of Directors of the Company," which includes Mrs. Asterbadi, may later designate "other agent(s)" to execute and file papers on the Debtor's behalf. Thus, the Bankruptcy Resolution, by its terms, did not replace the board with a single "Designated Representative" to oversee all corporate acts. And it did not and could not displace Maryland law, which requires that corporations be governed by the directors.[8]

One would expect that, if the Board Resolution were to take on a matter of such significance, it would use language that makes it clear that the board was relinquishing all authority to Dr. Asterbadi. But it does not even purport to grant to Dr. Asterbadi "full authority" to act for the board, or state that he "shall exercise the sole and exclusive authority of the board with respect to the matters delegated to him," or that his determinations on behalf of the company "shall not be subject to review by the board." The Bankruptcy Resolution authorized Dr. Asterbadi to take certain actions on the Debtor's behalf, but it did not absolve Mrs. Asterbadi of her directorship position or obligations. Of course, Mrs. Asterbadi could have resigned as a director, but she chose to stay on. Serving as a director has consequences, even if one chooses to

---

[8] "All business and affairs of a corporation, whether or not in the ordinary course, shall be managed by or under the direction of a board of directors." Md. Code Ann. Corps. & Ass'ns § 2-401(a).

do nothing to direct the operations of the company.

Mrs. Asterbadi also makes a couple of passing references to Bankruptcy Rule 9001, hinting that it may offer support for her immunity theory. Motion at 3, 15. It does not. Rule 9001 contains definitions of certain terms, including "Debtor:"

> When any act is required by these rules to be performed by a debtor or when it is necessary to compel attendance of a debtor for examination and the debtor is not a natural person: (A) if the debtor is a corporation, "debtor" includes, if designated by the court, any or all of its officers, members of its board of directors or trustees or of a similar controlling body, a controlling stockholder or member, or any other person in control; . . .

Although Mrs. Asterbadi does not develop this argument, her theory seems to be that because the "debtor," when applied to a corporation, includes certain persons such as officers or directors "if designated by the court," then those who are not so designated have no liability. As with much of her motion, she does not cite any case support for this argument. The reason is clear. Rule 9001 allows the court, for convenience, to designate a representative who can be compelled to attend an examination or to perform "any act [that] is required by these rules to be performed by a debtor."

There is no way to read this rule as *relieving* a director of her fiduciary obligations. First, its definition of "debtor" only "includes" certain persons, but does not state that others are off the hook. It also allows the court to look to the designated representative for "any act [that] is required *by these rules* to be performed by a debtor." That has no application here, because Count II does not depend on any rule that applies the term "debtor." To the contrary, Count II is based on common law and statutory fiduciary obligations.

Thus, Mrs. Asterbadi, who did not resign upon the filing of the Petition, remained a director of the debtor-in-possession and retained her fiduciary obligations to the company and its creditors. As shown below, she violated those duties imposed upon her by Maryland law.

16

2.    **Under the Facts of This Case, Mrs. Asterbadi Violated Her Fiduciary Duty as a Director of a Maryland Corporation.**

Every Maryland corporation is governed by its board of directors.  Md. Code Ann. Corps. & Ass'ns § 2-401.  Directors of Maryland corporations owe fiduciary duties of care and loyalty to the corporation.  *Independent Distribs., Inc. v. Katz*, 99 Md. App. 441, 461, 637 A.2d 886, *cert. denied*, 335 Md. 697, 646 A.2d 363 (1994).  Here, Zachair was owned and operated by Dr. and Mrs. Asterbadi, who served as the company's only two directors, and the operations were riddled with self-dealing.  As shown below, this conduct violated the duty of loyalty that they owed to the company.  Also, by her own admission, Mrs. Asterbadi surrendered all directorial responsibilities and thereby violated her duty of care.

a.    **The Record Shows That Mrs. Asterbadi Violated Her Duty of Loyalty or, at a Minimum, There Are Facts Genuinely in Dispute That Preclude Summary Judgment.**

A director's duty of loyalty is implicated by transactions between the company and others where a director "has a material financial interest."  Md. Code Ann. Corps. & Ass'ns § 2-419(a).  Under this statute a director is considered to be "interested" in a transaction, even if the director "does not personally benefit" from it, where "it would reasonably be expected that the director's exercise of independent judgment would be compromised" due to the "director's relationship to a party interested in the transaction."  *Shapiro v. Greenfield*, 136 Md. App. 1, 24, 764 A.2d 270, 282 (2000).  At common law, a transaction between a director and certain interested parties was voidable as a violation of the duty of loyalty.  *Sullivan v. Easco Corp.*, 656 F.Supp. 531, 533 (D.Md. 1987).

The Maryland Code now provides a safe harbor for interested director transactions, so not all interested transactions are voidable.  Under the Code, interested director transactions are not voidable if they are approved by fully informed, disinterested directors or stockholders, or if

the transaction "is fair and reasonable to the corporation." Md. Code Ann. Corps. & Ass'ns § 2-419(b). Where a corporation does not have any disinterested directors or stockholders, the only safe harbor available to validate a transaction is the "fair and reasonable" test. *Id.* Where applicable, the interested director has the burden of proving that the transaction "is fair and reasonable to the corporation." *Cherington Condo. Ass'n v. Kenney*, 254 Md. App. 261, 281, 271 A.3d 852, 864 (2022).

Here, the Avoidance Actions that Mrs. Asterbadi permitted Zachair to abandon include causes of action against herself, her husband, her relatives, and others to recover money paid by Zachair to those recipients for her family's personal benefit. See Englander Dec., ¶¶ 15-16. Clearly, these are "interested director" transactions because one would "reasonably expect" that her "exercise of independent judgment would be compromised" based on her relationship to these transferees. *Shapiro*, 136 Md. App. at 24, 764 A.2d at 282. The same holds true for her husband, who is also "interested" in the abandonment decision.

Because Zachair's only two directors and stockholders are Mr. and Mrs. Asterbadi, the only safe harbor available to protect the abandonment of these actions is if the abandonment was "fair and reasonable to the corporation." Md. Code Ann. Corps. & Ass'ns § 2-419(b). Of course, Mrs. Asterbadi has the burden of establishing the fairness and reasonableness of the abandonment. *Cherington Condo.*, 254 Ms. App. At 281, 271 A.3d at 864. This is an intensely factual inquiry and Mrs. Asterbadi does not even try to meet her burden. Her papers avoid any discussion of Maryland law regarding directors' duties. Thus, her motion must be denied. [9]

---

[9] Plaintiff acknowledges the statement in the Notice of Abandonment that "the Debtor believes that the Avoidance Actions are of inconsequential value to the estate" and further believes "that the cost of litigation risk of pursuing the potential Avoidance Actions in this case would be burdensome to the estate relative to the potential recoveries for the benefit of creditors." This

> **b.** **The Record Shows That Mrs. Asterbadi Violated Her Duty of Care or, at a Minimum, There Are Facts Genuinely in Dispute That Preclude Summary Judgment.**

Mrs. Asterbadi also violated her duty of care to Zachair. The duty of care requires a director to act "in good faith," "in a manner the director reasonably believes to be in the best interests of the corporation," and "with the care that an ordinarily prudent person in a like position would use under similar circumstances." Md. Code Ann. Corps. & Ass'ns § 2-405.1(c).

In satisfying his or her duty of care, a director is permitted to rely on reports or information supplied by corporate officers, board committees, or professionals such as lawyers or accountants. *Id.,* § 2-405.1(d). A director's reliance on others will not be deemed in good faith, however, "if the director has any knowledge concerning the matter in question which would cause the reliance to be unwarranted." *Id.*

Significantly, under Maryland law, a director's "act," for purposes of evaluating whether the director met the duty of care, also includes his or her "failure to act." The Code states:

> In this section, "act" includes, as the context requires:
>
> > (1) An act, an omission, a failure to act, or a determination made not to act; or
> >
> > (2) To act, omit to act, fail to act, or make a determination not to act.

*Id.*, § 2-405-1(a).

To be sure, the law presumes that actions by directors satisfy the standard of care. *Id.,* § 2-405-1(g). Thus, the Plaintiff bears the burden of proving a breach of the duty of care. *Bender v. Schwartz*, 172 Md. App. 648, 667, 917 A.2d 142, 153 (2007). Claims asserting a violation of a director's duty of care generally raise "a question of fact" that are not usually susceptible to

---

was a statement made by the self-interested management of the Debtor, and the Plaintiff does not share those beliefs.

resolution by motion.  *Goldstein v. Berman*, 2014 U.S. Dist. LEXIS 26348 at * 19 (D. Md. 2014).[10]

Here, there is little question that Mrs. Asterbadi also breached her fiduciary duty of care with respect to the abandonment of these valuable causes of action.  At a minimum, this highly factual issue will not permit a finding that Mrs. Asterbadi did not violate her fiduciary duty of care.

The thrust of Mrs. Asterbadi's motion is based on her inaction.  She seems to contend that because she abdicated any responsibility for governing Zachair, she cannot be liable for any action taken by Zachair.  Mrs. Asterbadi admits that, although she is a director of Zachair, she is not and never has been "involved in any of the operations, decisions or day-to-day affairs of managing" Zachair.  M. Asterbadi Dec., ¶ 4.  Although this is a damning admission, Mrs. Asterbadi seems to think it protects her from liability.  She declares that, while she would "occasionally sign documents presented to [her] by [her] husband in [her] role as director," she "often did not read them or understand what [she] was signing."  Id., ¶ 5.  She does not (and cannot) deny that she was mailed a copy of the notice of abandonment, but she admits that she "did not read it."  Id., ¶ 10.  She was also served with all major pleadings in the Bankruptcy Case, which would have allowed her to stay informed if she read her mail.  Englander Dec., ¶ 22. She declined to gather "any information regarding why Zachair waived its right to pursue the Avoidance Actions."  M. Asterbadie Dec., ¶ 12.  Clearly, Mrs. Asterbadi's performance as a director was abysmal, and she is not shielded from liability for failing to honor her duty of care

---

[10]  The Maryland Code permits corporations to include provisions in their charters exonerating directors from duty of care violations, so long as the director did not receive "an improper benefit" and absent a finding of "active and deliberate dishonesty."  Md. Code Courts and Jud. Proceedings § 5-418(a).  Zachair's charter has no limitation of liability for its directors.

to Zachair.

Mrs. Asterbadi's refusal to inform herself about the affairs of Zachair, and specifically her decision, whether conscious or not, to "go along" with the abandonment of claims against her and her family members, does not meet the standard of care. Maryland law requires her to act "in good faith," in a manner she "reasonably believes to be in the best interest of the corporation," and "with the care that an ordinarily prudent person in a like position would use under similar circumstances." Md. Code Ann. Corps. & Ass'ns § 2-405.1(c). Nothing in her declaration or her motion remotely suggests that Mrs. Asterbadi came to any belief, much less a "reasonable" belief, that the abandonment of the Avoidance Actions was "in the best interests" of Zachair. And her failure to meet any directorial responsibilities does not meet the "ordinarily prudent person" standard required of her.[11]

Presumably Mrs. Asterbadi will take the position that her failure to act, or to make any decisions for Zachair, somehow protects her from liability on a duty of care claim. To the contrary, Maryland law does not allow immunity for her failure to act. For purposes of the duty of care, the Maryland Code specifically defines an "act" of a director to include "an omission, a failure to act, or a determination made not to act." Md. Code Ann. Corps. & Ass'ns, § 2-405-1(a). Thus, even under Mrs. Asterbadi's theory, her failure to take any action to stop the abandonment of claims constitutes her own "act" as a director. Under the circumstances of this

---

[11] Mrs. Asterbadi relies on offer prices and on an appraisal of the property to imply that the property had a lot of value at the time of the abandonment. Motion at 9-10. Of course, the appraisal value was subject to numerous assumptions about the condition of the site and its development prospects, all of which was not known to the appraiser. And all offers were subject to due diligence, which is what led to the discovery of the serious problems with the plans to develop the property. The problems resulted from the improper fill activities conducted by the Debtor, which was (or should have been) known to the Debtor's directors.

case, her failure violated her fiduciary duty of care. [12]

Mrs. Asterbadi suggests that the case of *American Savings & Loan Assn v. Weber,* 99

B.R. 1001 (Bankr. D. Utah 1989), should persuade the Court to exonerate her. *Weber* involved

the personal Chapter 7 proceedings of Mr. and Mrs. Weber, who had served as directors of

Weber Trucking, Inc. ("Weber Trucking"), which had earlier filed for bankruptcy.  Mr. and Mrs.

Weber had guaranteed Weber Trucking's debt to American.  In the Chapter 7 case filed by Mr.

and Mrs. Weber, American contended that the Webers' obligations under the guarantee were not

dischargeable because, while operating Weber Trucking as debtor-in-possession, they had

misused Weber Trucking's cash collateral and thereby committed a "fraud or defalcation while

acting in a fiduciary capacity."  11 U.S.C. § 523(a)(4).  The Court found that Mrs. Weber, who

did not even know about the loan from American, had not committed a fraud or defalcation, and

therefore her debt was discharged.  99 B.R. at 1012.  Mr. Weber, who knowingly and actively

misused the cash collateral, was denied a discharge.  *Id.* at 1013.

---

[12] Even under statutes that do not expressly equate an "act" with a "failure to act," many cases
have found directors liable for shirking their responsibilities under similar circumstances.  *See,
e.g., Doyle v. Union Ins. Co.*, 202 Neb. 599, 277 NW2d 36 (1979)("ignorance because of neglect
of duty on the part of a director creates the same liability as actual knowledge and failure to act
on that knowledge"); *McCall v. Scott,* 239 F.3d 808, 817-818 (6th Cir. 2001)("whether a
corporate director has become liable for losses to the corporation through neglect of duty is
determined by the circumstances. If he has recklessly reposed confidence in an obviously
untrustworthy employee, has refused or neglected cavalierly to perform his duty as a director, or
has ignored either willfully or through inattention obvious danger signs of employee
wrongdoing, the law will cast the burden of liability upon him"); *Graham v. Allis-Chalmers Mfg.
Co.*, 41 Del. Ch. 78, 188 A.2d 125, 130 (Del. 1963)(same); *Olin Mathieson Chemical Corp. v.
Planters Corp.,* 236 S.C. 318, 328, 114 S.E.2d 321, 326 (1960)("An officer of a corporation will
not be shielded from liability because of a want of knowledge of wrongdoing of another officer if
that ignorance is the result of such officer's negligence and inattention to the business"); *FDIC v.
Bierman*, 2 F.3d 1424, 1433 (7th Cir. 1993)("The fact that an absentee director had no knowledge
of the transaction and did not participate in it does not absolve him of liability"); *Sandberg v.
Virginia Bankshares, Inc.,* 891 F.2d 1112, 1123 (4th Cir. 1989)(affirming liability where directors
"merely rubberstamped everything placed before them" and "exercised no independent judgment
whatsoever"), *rev'd in part*, 501 U.S. 1083 (1991)(applying Virginia law).

Of course, *Weber* has no application here, because Mrs. Asterbadi is not personally in bankruptcy and there is no issue about the dischargeability of her debt to Zachair's creditors. If she were to file for bankruptcy, there may or may not be an issue as to whether her directorial conduct with respect to Zachair was such as to warrant a denial of a discharge. Until then, there is no issue of dischargeability, and *Weber* simply does not apply.

Finally, Mrs. Asterbadi argues that she should be protected because the Notice of Abandonment was filed on the advice of counsel, and that the recommendation by counsel cannot be imputed to her. Motion at 14-15. This is a curious contention, because Mrs. Asterbadi never consulted counsel and, by her own admission, had nothing to do with any decisions on Zachair's behalf. M. Asterbadi Dec., ¶ 4; Englander Dec., ¶ 3. She did not rely on counsel at all (other than perhaps to file her proof of claim), and therefore cannot seek the protection of Md. Code Ann. Corps. & Ass'ns § 2-405.1(d). Moreover, this argument completely overlooks the fact that Zachair *rejected* its counsel's advice, which was to enter into tolling agreements or file complaints to preserve the Avoidance Actions against the Asterbadis and others. Englander Dec., ¶¶ 11. Mrs. Asterbadi may not seek protection from liability based on an asserted advice of counsel.

At a minimum, there are factual questions regarding her failure to act that preclude awarding her summary judgment. Without document production from Zachair's bankruptcy counsel or accountants, and without Mrs. Asterbadi's deposition, there is no way to conclude that she met her duty of care. At this point, for example, the record does not support the notion that Mrs. Asterbadi, in serving as a director of Zachair, acted "with the care that an ordinarily prudent person in a like position would use under similar circumstances." Md. Code Ann. Corps. & Ass'ns § 2-405.1(c). There is a serious question, as noted above, whether Mrs. Asterbadi relied

on counsel.  It is unknown whether Mr. Tarkenton was representing Mrs. Asterbadi in December 2021, which would mean that she was advised, through counsel, about the potential breach of fiduciary duty.  Given her lack of involvement in the affairs of Zachair, did she speak to her husband or others about how the Bankruptcy Case was proceeding?  Until the depositions of Dr. and Mrs. Asterbadi, that is an open question.  There is no way to enter summary judgment on this record as it currently stands.

> **B.**     **Count II Is Not an Improper "End Run" Around the Abandonment of Avoidance Actions.**

As her final argument, Mrs. Asterbadi contends that "equity" requires that Count II be dismissed, because in her view this count is merely a "back door" way to recover for the Avoidance Actions that were abandoned.  Motion at 16-17.  To be clear, the Plaintiff is not trying to relitigate the Avoidance Actions, which are barred by the statute of limitations.  To the contrary, Count II is a claim for breach of fiduciary duty against Dr. and Mrs. Asterbadi for *abandoning* those Actions.  Once again, Mrs. Asterbadi does not cite a single case supporting her argument based on some principle of "equity," and there is none.

Here, the Plaintiff, as Plan Administrator, was not involved in the underlying Bankruptcy Case until it was almost over.  After the Court learned about some of the activities of the Debtor that were at least questionable (or worse), the Court appointed the Plaintiff as Trustee, and later as Plan Administrator, charging him with pursuing recovery of estate property for the benefit of creditors.  Upon learning facts relating to the underlying case, it appears that the Debtor, controlled by Dr. and Mrs. Asterbadi, made the decision to abandon potentially valuable claims against themselves, against Asterbadi family members, and against third parties for money paid for the personal benefit of Dr. and Mrs. Asterbadi.  The decision to abandon these claims was made shortly after the Debtor learned that the sale of the property was in jeopardy, which in turn

24

meant that full recovery by creditors, and any recovery by Dr. and Mrs. Asterbadi as stockholders, also were in jeopardy.  The decision to abandon the Avoidance Actions was a self-interested decision by fiduciaries, and it was not approved by the Court or litigated in any sense. Instead, the abandonment happened without as much as a court order, as the Avoidance Actions were deemed abandoned after a short, fourteen day notice period during the holiday season (beginning December 22, 2021).  On these facts, the Plaintiff seeks to recover from the Asterbadis for breaching their fiduciary duties by approving the abandonment (or by neglecting their duty altogether, and thereby enriching themselves at the expense of creditors).

Mrs. Asterbadi argues that this claim is improper in light of the history of the case, without citing legal authority.  Because Mrs. Asterbadi declined to offer any case or other authority in this portion of her papers, this opposition necessarily has to guess at her theory.  For one thing, the principles of *res judicata,* encompassing the doctrines of claim preclusion and issue preclusion, do not help her.  She does not meet the requirements for claim preclusion, which include a "judgment on the merits in a prior suit."  *Ohio Valley Envtl Coal v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009).  There was no "prior suit," no decision "on the merits," and no "judgment."

Similarly, the doctrine of issue preclusion does not apply.  That doctrine requires the following elements, almost none of which apply here:

> (1) The issue sought to be precluded is identical to one previously litigated;
> (2) the issue must have been actually determined in the prior proceeding;
> (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Williams v. Romarm S.A.,* 116 F.Supp.3d 631, 637 (D. Md. 2015).  Here, this issue was not "previously litigated" or "actually determined," there is no "prior judgment" that is "final and

valid," and the Plaintiff was not a "party" to the Bankruptcy Case at the time of the abandonment.

Nor does the law of the case doctrine assist Mrs. Asterbadi. That doctrine acknowledges that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Even if one were to assume that this adversary proceeding is "the same case" as the main Bankruptcy Case in which the Notice of Abandonment was filed, it cannot be disputed that the Court did not "decide[] upon a rule of law." To the contrary, the abandonment happened without any court decision at all. It happened by a notice that was sent to creditors and others, to which no one objected at the time.[13]

In summary, there appears to be no basis to grant Mrs. Asterbadi summary judgment as to Count II based on her unsupported "end run" theory.

*REMAINDER OF PAGE INTENTIONALLY BLANK*

---

[13] Mrs. Asterbadi's citation to and reliance on waivers of the Avoidance Actions from earlier versions of the Plan and Disclosure Statements overlooks that, before November 2021, there were few alarm bells relating to the condition of the Zachair property. The concerns about the amount of recovery for creditors did not become acute until JP Land met with representatives of the Prince Georges County Department of Permitting, Inspections and Enforcement and learned that DPIE would not permit the construction of residential units on much of the Debtor's property. See Englander Dec., ¶¶ 7-9.

## V.    CONCLUSION

For the foregoing reasons, the Plaintiff requests that the Court deny Mrs. Asterbadi's motion.


Dated:  November 17, 2023                    Respectfully submitted,


                                                    */s/ Robert R. Vieth*
                                            Lawrence A. Katz, Esq. (MD Bar #02526)
                                            Robert R. Vieth, Esq. (MD Bar #22926)
                                            Kristen E. Burgers, Esq. (MD Bar # 30846)
                                            HIRSCHLER FLEISCHER, PC
                                            1676 International Drive, Suite 1350
                                            Tysons, Virginia 22102
                                            Tel:  (703) 584-8900
                                            Fax:  (703) 584-8901
                                            Email:  lkatz@hirschlerlaw.com
                                                    rvieth@hirschlerlaw.com
                                                    kburgers@hirschlerlaw.com

                                            *Counsel for Plaintiff Lawrence A. Katz, Plan Administrator for the Bankruptcy Estate of Zachair, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of November 2023, the foregoing Memorandum in Opposition to Motion for Summary Judgment as to Maureen Asterbadi on Count II was served through the Court's electronic filing system upon:

> Steven L. Goldberg, Esq.
> McNamee Hosea, P.A.
> 6404 Ivy Lane, Suite 820
> Greenbelt, MD 20770
> sgoldberg@mhlawyers.com
>
> *Counsel for Defendant Dr. Nabil J. Asterbadi*
>
>
> Patrick J. Potter, Esq.
> Cynthia C. Robertson, Esq.
> Meaghan Murphy, Esq.
> PILLSBURY WINTHROP SHAW PITTMAN LLP
> 1200 Seventeenth Street, NW
> Washington, DC 20036
> patrick.potter@pillsburylaw.com
> cynthia.robertson@pillsburylaw.com
>
> *Counsel for Defendant Maureen Asterbadi*

> _____
> */s/ Robert R. Vieth*
> Robert R. Vieth, Esq. (MD Bar #22926)
> HIRSCHLER FLEISCHER, PC
> 1676 International Drive, Suite 1350
> Tysons, Virginia 22102
> Tel:  (703) 584-8900
> Fax:  (703) 584-8901
> Email:   rvieth@hirschlerlaw.com

16676179.2  047938.00001